Matthew R. Bainer, Esq. (SBN 220972)
**THE BAINER LAW FIRM**
1901 Harrison St., Suite 1100
Oakland, California 94612
Telephone:  (510) 922-1802
Facsimile:   (510) 844-7701
mbainer@bainerlawfirm.com
*Attorneys for Plaintiff Armando Olvera*

*(Additional Counsel Listed on Next Page)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO OLVERA, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>ALSCO, INC., a Nevada corporation; doing business in California as "Steiner Corporation," and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No.:  5:17-cv-01500-RGK-KS<br><br>**JOINT NOTICE OF MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:    January 22, 2018**<br>**Time:   9:00 a.m.**<br>**Judge:  Judge R. Gary Klausner** |

Gregory M. Saylin (185328)
gsaylin@fabianvancott.com
Scott M. Petersen *(admitted pro hac vice)*
spetersen@fabianvancott.com
FABIAN VANCOTT
215 S. State Street, Suite 1200
Salt Lake City, UT 84111
P: 801-531-8900
F: 801-596-2814

Philip D. Dracht (219044)
pdracht@fabianvancott.com
FABIAN VANCOTT
15 W. Carrillo
Santa Barbara, CA 93101
P: 801-865-0245
F: 801-596-2814

*Attorneys for Defendant Alsco Inc.*

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 22, 2018 at 9:00 a.m., in Courtroom 850 before Honorable R. Gary Klausner of the United States District Court for the Central District of California, located in the Roybal Federal Building and U.S. Courthouse at 255 East Temple Street, Los Angeles, CA 90012, Plaintiff Armando Olvera and Defendant Alsco Inc. will, and hereby do, jointly move this Court to:

1. Preliminarily approve the settlement described in the Stipulation of Settlement (attached as Exhibit A to the Declaration of Matthew Bainer);

2. Certify, for settlement purposes only, the proposed settlement class;

3. Approve distribution of the proposed Notice of Class Action Settlement to the settlement class;

4. Appoint Plaintiff Armando Olvera as the class representative;

5. Appoint The Bainer Law Firm as Class Counsel;

6. Appoint Simpluris as the claims administrator; and

7. Set a hearing date for final approval of the settlement.

This Motion is based upon: (1) this Joint Notice of Motion and Joint Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Matthew Bainer; (4) the Joint Stipulation of Settlement; (5) the Notice of Class Action Settlement; (6) the Request for Exclusion Form; (7) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; and (8) other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion. This Motion is brought jointly by all parties herein.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

Dated: December 8, 2017                    THE BAINER LAW FIRM

2

3                                          By: /s/ Matthew R. Bainer
                                               Matthew R. Bainer
4                                              Attorneys for Plaintiff

5

6    Dated:  December 8, 2017               FABIAN VANCOTT

7

8                                          By: /s/ Scott M. Peterson
                                               Gregory M. Saylin
9                                              Scott M. Petersen
10                                             Attorneys for Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

FACTS AND PROCEDURE .............................................................. 2

    A.   Brief Overview of the Litigation.......................................... 2

    B.   Plaintiff Actively Engaged in the Discovery Process................... 3

    C.   The Parties Settled After a Full Day of Arm's Length Negotiations at a Private Mediation................................................ 4

        1.   The Proposed Settlement Fully Resolves Plaintiff's Claims............... 5

        (a)  Composition of the Settlement Class ................................... 5

        (b)  Settlement Consideration ................................................ 5

        2.   Formula for Calculating Settlement Payments............................ 6

        3.   Release by the Settlement Class ......................................... 7

ARGUMENT ..................................................................................... 7

    A.   The Court Should Preliminary Approve the Settlement. ................ 7

    B.   The Settlement Was Negotiated after Plaintiff's Counsel Conducted a Thorough Investigation of the Factual and Legal Issues................ 8

    C.   The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel............ 9

    D.   The Proposed Settlement Is Reasonable Given the Strengths of Plaintiff's Claims and the Risks and Expense of Litigation. ............ 9

    E.   The Proposed Class Representative Enhancement Payments Are Reasonable. ................................................................. 12

    F.   The Negotiated Attorneys' Fees and Costs Are Reasonable. .......... 13

    G.   The Proposed Class Meets the Requirements of Rule 23. .............. 13

        1.   The Proposed Class Is Sufficiently Numerous and Ascertainable.......... 14

        2.   There are Common Questions of Law and Fact. ....................... 14

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

3.    Plaintiff's Claims Are Typical of the Proposed Settlement Class. ......... 14

4.    Plaintiff and Their Counsel Will Adequately Represent the Interests of the Proposed Settlement Class................................................. 15

H.    Common Issues Predominate Over Individual Issues.............................. 15

I.    Class Settlement Is Superior to Other Available Means of Resolution. ................................................................................................ 16

J.    The Proposed Class Notice Adequately Informs Class Members About The Case And Proposed Settlement. ................................................. 17

**CONCLUSION** ................................................................................................ 18

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 13

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................... 14

*Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007) ............................ 10

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) ........................................ 12

*Brown v. Fed. Express Corp.,* 249 F.R.D. 580 (C.D. Cal. 2008) ..................................... 10

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ............................................. 9

*Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236
(N.D. Cal. 2010) ............................................................................................................... 14

*Gonzalez v. Officemax N. Am.*, 2012 WL 5473764 (C.D. Cal. Nov. 5, 2012) ............... 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................... 14, 15, 16

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),
   2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ............................................ 9

*In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S.
   Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) ........................................................... 9

*In Re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
   Case No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ................. 12

*Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) ................... 10

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008) ........................................... 10

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ....................................................... 8

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ...................... 12

*Marisol v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997) .......................................................... 14

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ................................................................. 8

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
(C.D. Cal. 2004) ................................................................................................................ 8

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Ordonez v. Radio Shack, Inc*., 2013 U.S. Dist. LEXIS 7868

   (C.D. Cal. Jan. 17, 2013) ............................................................. 10

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010).................................. 14

*Rodriguez v. West Pub. Corp*., 463 F.3d 948 (9th Cir. 2009) ................................. 11

*Stanton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) ................................. 8

*Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS 17119

   (C.D. Cal. Feb. 25, 2008).............................................................. 12

*Torrisi v. Tuscson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)........................................ 8

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) .......................... 11

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114

   (E.D. Cal. 2009) ....................................................................... 13

*Vizcaino v. Microsoft Corp*., 290 F.3d 1043 (9th Cir. 2002) ................................. 12

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010)................................ 16


**STATE CASES**

*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121 (2006)............................................. 10

*Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715 (2004)........................................ 12

*Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012)................................. 9, 10

*Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380 (2010) ............................... 12

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ...................................... 13

*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443 (2007) ................................... 10

*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010)............................................ 10

*Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462 (1981) ............................................. 10

*Sav-On Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319 (2004) ................ 10, 12

*Smith v. Super. Ct.*, 39 Cal. 4th 77 (2006) ...................................................... 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................. 13, 16

Fed. R. Civ. P. 23(a) ....................................................................... 13, 14, 15

Fed. R. Civ. P. 23(a)(1) ................................................................................ 13

Fed. R. Civ. P. 23(a)(2) ................................................................................ 14

Fed. R. Civ. P. 23(a)(4) ................................................................................ 14

Fed. R. Civ. P. 23(b)(3) ................................................................................ 13

Fed. R. Civ. P. 23(c)(2) ................................................................................ 17

Fed. R. Civ. P. 23(e) ...................................................................................... 8

Fed. R. Civ. P. 23(e)(1)(A) ............................................................................ 7

**TREATISES**

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) .......................... 8

Manual for Complex Litigation (4th ed. 2004) ................................................... 7

Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004) ......................... 13

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ................... 17

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action*
      *Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1
      (March 2004) ......................................................................................... 13

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Armando Olvera ("Plaintiff") and Defendant Alsco Inc. ("Defendant and/or "Alsco") jointly seek preliminary approval of the Joint Stipulation Settlement,[1] which, if approved, would provide significant monetary relief for more than 400 current and former individuals who worked for Defendant in California.

The basic terms of the Settlement provide for the following:

(1)    A Settlement Class defined as all persons who, from June 27, 2013, up to and including the date that the Court grants preliminary approval of this Settlement, worked for Defendant in the state of California as a route sales driver, route sales representative, or other similar position title.

(2)    A class Settlement Fund of $550,000. The class Settlement Fund includes:

        (a)    A Net Settlement Amount of approximately $339,866.67[2] (the class Settlement Fund minus the requested Attorneys' Fees and Costs, settlement administration costs, and the requested Class Representative Service Enhancement), which will be allocated to participating Settlement Class Members on a pro-rata basis according to the number of weeks that each Settlement Class Member worked as an hourly employee during the Class Period, less all employee and employer portions of any payroll tax requirements and any other applicable payroll deductions required by law;

        (b)    Attorneys' fees of up to one-third of the class Settlement Fund, or $183,333.33, and reasonable litigation costs and expenses, currently estimated not to exceed $15,000;

---

[1] Hereinafter, "Settlement" or "Settlement Agreement" as attached as Exhibit "A," to Declaration of Matthew Bainer in Support of Motion for Preliminary Approval ("Bainer Decl"). Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

[2] Before employer or employee taxes and any other payroll deductions required by law.

(c)    Settlement administration costs, currently estimated to be $9,300, to be paid to the jointly selected class action Settlement Administrator, Simpluris[3];

(d)    A Class Representative Service Enhancement in the amount of $2,500 to Plaintiff Armando Olvera.

Plaintiff and Defendant negotiated the Settlement at arm's length with the assistance of experienced class action employment mediator Michael J. Loeb, Esq. The Settlement provides relief to Settlement Class Members that is fair, reasonable, and valuable especially considering the risks inherent in proceeding to trial. Indeed, the settlement provides an average net recovery of more than $860, which is significantly more than other recent wage and hour settlements. The relief offered by the Settlement is particularly notable when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see infra*). Through this settlement, Settlement Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial.

For these and other reasons, the proposed Settlement satisfies all criteria for preliminary settlement approval.

## FACTS AND PROCEDURE

### A.    Brief Overview of the Litigation

Plaintiff filed his class action complaint on June 19, 2017 in San Bernardino County Superior Court. The Complaint alleges claims for relief: (1) violations of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violations of the California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wage); (3) violations of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (4) violations of California Labor Code § 226.7 (unpaid rest period premiums); (5) violations of California Labor Code §§ 201 and 202 (wages not timely paid on termination); (6)

---

[3] *See* Exhibit "B" to Bainer Decl.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

violations of California Labor Code § 226(a) (non-compliant wage statements); and (7) violations of California Business and Professions Code § 17200, *et seq* (unfair business practices). On July 27, 2017, Defendant removed the action to the United States District Court, Central District of California.

On August 3, 2017, Defendant Answered the Complaint, denying the alleged violations.

Plaintiff's Complaint's claims flow from the following core factual allegations:

- Alsco did not consistently provide non-exempt employees with a timely meal or rest breaks, as required under California Law.

- Alsco did not consistently pay employees for allegedly missed meal and rest breaks.

- Alsco required employees to perform additional work tasks while off-the-clock, resulting in unpaid work time.

- As a derivative result of the above allegations, Alsco failed to pay all terminated employees the correct amount of wages earned and failed to provide accurate itemized wage statements.

Plaintiff seeks to represent a class of all persons who, from June 27, 2013, up to and including the date that the Court grants preliminary approval of this Settlement, worked for Defendant in the state of California as route sales driver, route sales representative, or other similar position title. ("Bainer Decl." ¶ 2.)

### B.  Plaintiff Actively Engaged in the Discovery Process.

Plaintiff has conducted sufficient investigation and discovery in the Action in order to assess the merits and risks of proceeding to trial with the claims brought herein, and the adequacy and fairness of this Settlement in light thereof. Plaintiff served both Special Interrogatories and Requests for Production of Documents. In anticipation of the parties' mediation session, Defendant produced over 10,000 pages of policy documents, handbooks, operations materials and time and billing records. Using this information, Plaintiff's Counsel was able to determine the average hourly rate of pay for Settlement

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    Class Members, the total approximate number of Settlement Class Members who worked

2    during the Class Period, and the total number of former employees during the Class

3    Period.  (Bainer Decl. ¶ 3.)

4         Plaintiff's Counsel performed an extensive investigation into the claims at issue,

5    including (1) determining the suitability of the putative class representative through

6    interviews, background investigations, and analyses of employment files and related

7    records; (2) researching wage-and-hour class actions involving similar claims; (3)

8    acquiring information regarding putative Settlement Class Members' potential claims,

9    identifying additional witnesses, and obtaining documents in support of Plaintiff's

10   eventual Motion for Class Certification; (4) obtaining and analyzing Defendant's wage-

11   and-hour policies and procedures; (5) researching the latest case law developments

12   bearing on the theories of liability; (6) researching settlements in similar cases; (7)

13   preparing valuation analyses of claims; (8) participating in a full-day private mediation

14   session and preparing related memoranda; (9) negotiating the terms of this Settlement;

15   (10) finalizing the Joint Stipulation of Settlement; and (11) and drafting preliminary

16   approval papers.  The document and data exchanges allowed Plaintiff's Counsel to assess

17   the strengths and weaknesses of the claims against Defendant and the benefits of the

18   proposed Settlement.  (Bainer Decl. ¶ 4.)

19       **C.    The Parties Settled After a Full Day of Arm's Length Negotiations at**
20       **a Private Mediation.**

21        After exchanging pre-mediation discovery, the parties attended a full day mediation

22   with Michael J. Loeb, who specializes in mediating employment disputes, including wage

23   and hour class actions.  As a result of the mediation, the parties were able to reach an

24   agreement on the principal terms of settlement. The parties entered into a memorandum of

25   understanding at the mediation and then negotiated the remaining details over the course

26   of several weeks.  At all times, the Parties' negotiations were adversarial and non-

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

collusive.  The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue.  (Bainer Decl. ¶ 5.)

### 1.    The Proposed Settlement Fully Resolves Plaintiff's Claims.

#### (a)    Composition of the Settlement Class

The proposed Settlement Class consists of all persons who, from June 27, 2013, up to and including the date that the Court grants preliminary approval of this Settlement, worked for Defendant in the state of California as a route sales driver, route sales representative, or other similar position title.  (Settlement Agreement, p. 4:1-6)

#### (b)    Settlement Consideration

Plaintiff and Defendant have agreed to settle the underlying class claims in exchange for a class Settlement Fund in the amount of $550,000.  The class Settlement Fund includes (1) settlement payments to each Settlement Class Member who does not file a request for exclusion; (2) up to $183,333.33 in attorneys' fees; (3) reasonable litigation costs and expenses, currently estimated not to exceed $15,000; (4) settlement administration costs of approximately $9,300 (current estimate); (5) Class Representative Service Enhancement of $2,500 to Plaintiff; and (6) the employer's share of payroll tax requirements, including any employer FICA, FUTA, and SDI contributions.  (Settlement Agreement, p. 3:12-16).  A premium is appropriate for Armando Olvera since he was lead plaintiff, actively supported Plaintiff's Counsel's efforts on behalf of the class, and is executing a full release of claims as part of the Settlement Agreement.

Subject to the Court approving Attorneys' Fees and Costs, settlement administration costs, and the Class Representative Service Enhancement, the Net Settlement Amount will be distributed to all Settlement Class Members who do not submit a request for exclusion.  Because there is no claim form required to be submitted by the class members, 100% of the settlement fund will be paid out with no reversion of funds to the Defendant.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## 2.    Formula for Calculating Settlement Payments

Each Settlement Class Member's share of the Net Settlement Amount will be proportional to the number of weeks he or she worked as an hourly employee during the Class Period. (Settlement Agreement ¶ 5.3.1.) The Settlement Administrator will calculate individual Settlement Amounts as follows:

- Defendant will provide to the Settlement Administrator an electronic database of all Class Members, including each Class Member's name, social security number, last known address, telephone number(s), and Verified Weeks of Employment.

- To determine each Settlement Class Member's estimated individual Settlement Amount, the Settlement Administrator will divide the respective total weeks worked for each Settlement Class Member by the total weeks worked for all Settlement Class Members, resulting in the Payment Ratio for each Settlement Class Member. The Settlement Administrator will multiply each Settlement Class Member's Payment Ratio by the Net Settlement Amount to determine his or her Individual Settlement Payment.

- The individual Settlement Amount will be reduced by any required deductions for each Settlement Class Member as specifically set forth herein, including employee-side tax withholdings or deductions.

- The Net Settlement Amount will be disbursed to all Settlement Class Members who do not request to be excluded from the settlement.

There are approximately 393 Settlement Class Members, so the average net recovery will likely exceed $850. This average net recovery is significantly higher than many wage and hour class action settlements approved by California state and federal courts.[4]

---

[4] *See*, *e.g.*, *Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average

Page 6

### 3.    Release by the Settlement Class

In exchange for the class Settlement Fund, Plaintiff and Settlement Class Members who do not opt out will release the Released Claims.  (Settlement Agreement p. 17:14-18:8).  The Released Claims are those claims, within the applicable statute of limitations period (June 27, 2013, through the date of Preliminary Approval) "that were asserted in the Action and such claims that arise out of the alleged facts, circumstances, and occurrences underlying the allegations as set forth in the Complaint." (*Id.* at 17).  Plaintiff Olvera will additionally execute a general release of claims. (*Id*. at 15-17).

### ARGUMENT

### A.    The Court Should Preliminary Approve the Settlement.

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed.  Fed. R. Civ. P. 23(e)(1)(A).  To protect absent class members' due process rights, approval of class action settlements involves three steps: (1) preliminary approval of the proposed settlement including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to exclude themselves; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement.  *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

At preliminary approval, the Court first determines whether a class exists.  *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003).  Then, the Court evaluates whether the settlement is within the "range of reasonableness."  *See, generally*, 3 Conte & Newberg, *Newberg on Class Actions*, section 7.20 (4th ed. 2002) § 11.25.  "Whether a

---

net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

To make this determination at preliminary approval, the Court may consider some or all of the following factors: (i) the extent of discovery completed, and the stage of proceedings; (ii) the strength of the Plaintiff's case and the risk, expense, complexity and likely duration of further litigation; (iii) the risk of maintaining class action status throughout trial; (iv) the amount offered in settlement; and (v) the experience and views of counsel. *See Stanton*, 327 F.3d at 959 (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (*citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

### B.    The Settlement Was Negotiated after Plaintiff's Counsel Conducted a Thorough Investigation of the Factual and Legal Issues.

As set forth in greater detail above, based on the Plaintiff's analysis of documents produced by Defendant, including reviewing over 10,000 pages of information provided by Defendant, and consulting with relevant witnesses, Plaintiff's Counsel was able to realistically assess the value of Plaintiff's claims and intelligently engage defense counsel in settlement discussions that resulted in the proposed settlement now before the Court. (Bainer Decl. ¶3-5.) By engaging in a thorough investigation and evaluation of Plaintiff's claims, Plaintiff's Counsel can knowledgeably opine that the Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best interests of Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation and various defenses asserted by Defendant.

**C.    The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel.**

The Settlement is result of arm's-length negotiations.  The Parties participated in a full-day private mediation session with Michael J. Loeb, who helped to manage the Parties' expectations and provided a neutral analysis of the issues and risks to both sides.[5] The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement.  Plaintiff was represented by The Bainer Law Firm, seasoned class action counsel who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions.  (*See generally* Bainer Decl.)  Defendant was represented by Fabian VanCott, a nationally respected defense firm.

**D.    The Proposed Settlement Is Reasonable Given the Strengths of Plaintiff's Claims and the Risks and Expense of Litigation.**

Plaintiff evaluated the claims in light of the risks of continued litigation in order to determine a reasonable range of class relief.  Although Plaintiff believes the class claims are strong, Defendant disputes liability and the appropriateness of class certification (for all purposes other than settlement) and has and will vigorously defend the action.  Plaintiff recognizes that if the litigation had continued, he may have encountered significant legal and factual hurdles that could have prevented the class from obtaining any recovery.  To be sure, a number of cases have found wage and hour actions to be especially amenable to class resolution.[6]  However, some courts have gone the other way, finding that some of the

---

[5] *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement), *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) (same); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").  At all times, the Parties' negotiations were adversarial and non-collusive.

[6] *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012) ("Claims

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

very claims at issue here—meal period, rest period, and off-the-clock violations—were not suitable for class adjudication because they raised too many individualized issues.[7]

———————————

alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment . . . The theory of liability – that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law - is by its nature a common question eminently suited for class treatment."). Litigation of wage and hour claims on class-wide bases (1) encourages the vigorous enforcement of wage laws (*Smith v. Super. Ct.*, 39 Cal. 4th 77, 82 (2006)); (2) "eliminates the possibility of repetitious litigation" (*Sav-on Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319, 340 (2004)); (3) affords small claimants a method of obtaining redress (*id.*); (4) "deter[s] and redress[es] alleged wrongdoing" (*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1298 (2010)); (5) "avoid[s] windfalls to defendants" (*Brinker*, 53 Cal. 4th at 1054); (6) avoids "inconsistent or varying adjudications" (*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121, 129 (2006)); and (7) alleviates the concerns of employees about retaliation (*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443, 462-63 (2007); *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th at 1308). These policies are so strongly favored that "class certifications should not be denied [in wage and hour cases] so long as the absent class members' rights are adequately protected." *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462, 474 (1981); *see also Sav-On*, *supra*, 34 Cal. 4th 319 (upholding certification of an overtime class action based on a showing that all plaintiffs performed jobs that were highly standardized, and as a result, class members performed essentially the same tasks, most of which were non-exempt as a matter of law).

[7] *See Duran v. U.S. Bank National Association*, 59 Cal. 4th 1, 31 (2014) (reversing a verdict from a class trial); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (affirming denial of certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist. LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining

Page 10

1      Some courts have denied certification even when an employer's policies are

2    unlawful on their face.  For instance, in *Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist.

3    LEXIS 7868, *35-41 (C.D. Cal. Jan. 17, 2013), the court denied certification even though

4    the plaintiff submitted evidence of a facially unlawful policy regarding rest breaks.  The

5    *Ordonez* court concluded that the predominance and superiority elements were not met

6    based on the employer's presentation of anecdotal evidence of lawful compliance

7    notwithstanding the unlawful policy.  *Id*. at *38-40.

8      As the above examples illustrate, the prospect of certifying a wage and hour action

9    is always uncertain, and the risk of being denied class certification militates in favor of

10    settlement.  A denial of class certification effectively forecloses continued litigation, as

11    neither the individual nor his or her attorney will have any incentive to proceed with an

12    individual case when such small claims are at stake.  *See In re Baycol Cases I & II*, 51 Cal.

13    4th 751, 758 (2011) (explaining that a dismissal of class claims is effectively the "death

14    knell" of the case, despite survival of individual claims).  In other words, for cases where

15    individual damages are relatively small, denial of class certification results in a near-

16    complete loss for Plaintiff as well as no recovery for the employees, who are shut out of

17    the action.  Thus, if the putative class had not been certified, the value of Plaintiff's case

18    would have been reduced to a fraction of the value of this Settlement; indeed, Defendant

19    would have likely offered no money to settle the class-wide claims if certification had

20    been denied.

21      In summary, although Plaintiff and his counsel maintain a strong belief in the

22    underlying merits of the claims, they also acknowledge the significant challenges posed by

23    continued litigation through certification and/or at the merits stage.  Accordingly, when

24    balanced against the risk and expense of continued litigation, the settlement is fair,

25    adequate, and reasonable.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.

---

to certify class action because individual issues predominated when different employee
stations provided different practices with respect to meal periods).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

### E.    The Proposed Class Representative Service Enhancement Is Reasonable.

At final approval, Plaintiff will request Court-approval of a Class Representative Service Enhancement of $2,500 to Plaintiff. Payments to named plaintiffs for their services as class representatives are customary and generally approved.[8]  Plaintiff assisted Plaintiff's Counsel with the preparation of the initial complaint; provided Plaintiff's Counsel with material evidence regarding the claims; assisted Plaintiff's Counsel in marshalling the evidence necessary to prosecute the claims on behalf of the Settlement Class; and regularly sought reports on the status of the case.

Plaintiff's Counsel believes that no action would likely have been taken by Settlement Class Members individually, and no compensation would have been recovered for them, but for Plaintiff's services on the Class's behalf.  Plaintiff has thus advanced California's public policy goal of enforcing wage and hour laws.  *See Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004).  It follows that the proposed Class Representative Service Enhancement, both for Plaintiff's services as class representative, and for his general release of his own claims, is reasonable. Defendant does not oppose Plaintiff's request for the Class Representative Service Enhancement.

---

[8] *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995); *Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380, 1393 (2010); *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to named plaintiffs for their efforts in bringing the case); *Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 to two class representatives); *In Re Janney Montgomery Scott LLC Financial Consultant Litig.*, Case No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ($20,000 each to three  class representatives).  The incentive award should be approved so long as it is not so high [as] to create a conflict of interest between the representative and class members, or be divorced from the actual value the representative provided to the action.  *Rodriguez v. West*, 463 F.3d at 959-61.

**F.     The Attorneys' Fees and Costs Are Reasonable.**

At final approval, Plaintiff will seek, and Defendant does not oppose, Court-approval of attorneys' fees in the amount of thirty percent of the common fund, or $183,333.33, and litigation costs currently estimated not to exceed $15,000.  (Settlement Agreement p. 9:1-4).

Plaintiff asserts, and Defendant does not oppose, Plaintiff's request for attorneys' fees in the amount of one-third of the common fund as reasonable under California law.  "In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees."  *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  The state law governing the underlying claims in a diversity action "also governs the award of fees."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  California courts routinely award attorneys' fees equalling one-third or more of the potential value of the common fund.[9]

If the Court reduces the attorney fees or costs, the difference between the fees and costs requested and the fees and costs approved by the Court will be deposited into the common fund and distributed to class members.

**G.     The Proposed Settlement Class Meets the Requirements of Rule 23.**

Before granting preliminary approval of the Settlement, the Court must determine whether the proposed settlement class meets the requirements of Rule 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632.  An analysis of the requirements of Rule 23(a) and 23(b)(3), commonly referred to as

---

[9] *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").  Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements:  An Empirical Study, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates).

numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed settlement class is appropriate.

### 1.    The Proposed Settlement Class Is Sufficiently Numerous and Ascertainable.

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members).

Here, the proposed Settlement Class consist of all persons who, from June 27, 2013, up to and including the date that the Court grants preliminary approval of this Settlement, worked for Defendant in the state of California as a route sales driver, route sales representative, or other similar position title.  Approximately 393 individuals currently fall within this the Settlement Class.

### 2.    There are Common Questions of Law and Fact.

Commonality is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." *Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998).  Here, all Settlement Class Members were employees of Defendant throughout California and were subject to the same employment policies and practices that serve as the basis for Plaintiff's allegations in the Complaint.

### 3.    Plaintiff's Claims Are Typical of the Proposed Class.

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020).  Thus, typicality is

"satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Plaintiff's wage and hour claims are typical of the proposed Settlement Class because they arise from the same factual basis and are based on the same legal theories applicable to the other Settlement Class Members. Likewise, Plaintiff's interests are entirely coextensive with the interests of the Settlement Class. Accordingly, Plaintiff is typical of the Settlement Class Members he seeks to represent.

### 4.    Plaintiff and His Counsel Will Adequately Represent the Interests of the Proposed Settlement Class.

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1) the proposed representative Plaintiff does not have conflicts of interest with the proposed class, and (2) Plaintiff is represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

The Rule 23(a) adequacy requirement is met here as Plaintiff has represented putative Settlement Class Members with a focus and zeal true to the fiduciary obligation that he has undertaken, working closely with his attorney throughout the case.

Plaintiff's Counsel also satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. Plaintiff's Counsel is experienced in wage and hour class litigation and has the credentials to serve as adequate class counsel. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

### H.    Common Issues Predominate Over Individual Issues.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. The California statutes relating to each of

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff's claims apply with equal force and effect to all Settlement Class Members. Factually, Defendant's policies and practices apply class-wide and Defendant's liability can be determined by facts common to all members of the class. The wage and hour issues are both numerous and substantial, and a class action is the most advantageous method of dealing with the claims of the Settlement Class Members. *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.").

Likewise, the fact that the Settlement affords all Settlement Class Members an equal opportunity to obtain compensation for identical claims via a standardized process provides further support for the conclusion that common issues of law and fact predominate and that the claims are amenable to class-wide resolution. *See Amchem Products, Inc. v. Windsor*, 521 U.S. at 619 (rejecting the Third Circuit's holding that the requirements of Rule 23 "must be satisfied without taking into account the settlement," and finding instead that "settlement is relevant to a class certification.").

**I.      Class Settlement Is Superior to Other Available Means of Resolution.**

Similarly, there can be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023.

Addressing the allegations through a class action is superior to individual litigation or any alternative methods that may exist. This action was filed precisely because Plaintiff believed those alternatives would have proven ineffective in addressing the problem on a class-wide basis. Additionally, although the value of the claims is not insignificant, the amount in controversy is not nearly enough to incentivize individual action. *See Wolin*,

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification."). As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement Class proposed by the Parties is appropriate.

### J.    The Proposed Class Notice Adequately Informs Settlement Class Members About the Case And Proposed Settlement.

The Notice of Class Action Settlement ("Class Notice")[10] was jointly drafted and approved by the Parties and provides Settlement Class Members with the information necessary to allow each potential member to make an informed decision regarding his or her participation in the Settlement. The Class Notice provides information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definition; the deadlines by which Settlement Class Members must submit a Request for Exclusion or objection; the date for the final approval hearing; the formula used to calculate settlement payments; and a statement that Settlement Class Members will release the settled claims unless they opt out. Accordingly, the Class Notice satisfies the requirements of Rule 23(c)(2).

If the Court grants preliminary approval, the Settlement Administrator will mail the Class Notice to all Settlement Class Members via first class United States mail. (Settlement Agreement p. 8:12-16). Prior to mailing the Class Notice, the Settlement Administrator will attempt to locate any changed addresses using, among other resources, an address update service such as NCOA or Accurint to obtain an updated address. (*Id.* at 8:4-8). This method was negotiated by the Parties to maximize the Settlement Class Member response rate while ensuring cost effective administration of the Settlement.

---

[10] A copy of the parties proposed Class Notice and Exclusion Forms are incorporated in and attached as Exhibits "1" and "2" to the Settlement Agreement.

Page 17

The last step in the settlement approval process is the Final Approval Hearing, at which time the Court may hear all evidence and arguments necessary to evaluate the Settlement.  At the Final Approval Hearing, proponents of the Settlement may explain and describe its terms and conditions and offer arguments in support of settlement approval. Settlement Class Members may be heard in support of or in opposition to the Settlement.

## CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims.  Having appropriately presented the materials and information necessary for preliminarily approval, the Parties jointly request that the Court preliminarily approve the settlement.


Dated: December 8, 2017              THE BAINER LAW FIRM


                                     By: */s/ Matthew R. Bainer*
                                         Matthew R. Bainer
                                         Attorneys for Plaintiff
                                         Charish Espinosa

Dated:  December 8, 2017             FABIAN VANCOTT


                                     By: */s/ Scott M. Peterson*
                                         Gregory M. Saylin
                                         Scott M. Petersen
                                         Attorneys for Defendant


I, Matthew R. Bainer, attest that all other signatures listed, and on whose behalf the filing is submitted, concur in the filing's contents and have authorized the filing.